# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| CARLA GARRETT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MONTEREY FINANCIAL SERVICES, *et al.*,<br><br>Defendant. | Case No. 1:18-cv-00325-MJG |

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO MOTION TO DISMISS
## AND TO COMPEL ARBITRATION

Plaintiff Carla Garrett ("Ms. Garrett") respectfully submits this Memorandum of Law in opposition to the Motion to Dismiss and to Compel Arbitration (the "Motion") filed by Defendant Monterey Financial Services ("Defendant").

## PRELIMINARY STATEMENT

By way of the Motion, Defendant seeks to dismiss Ms. Garrett's Complaint and to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §1 *et seq.* and Fed. R. Civ. P. 12(b)(1). The arbitration clause in the contract between the parties is unconscionable as a matter of public policy and must not be enforced. The

Motion should be denied and Plaintiff's Complaint should proceed in the jurisdiction of the federal court.

## STATEMENT OF FACTS

On March 2, 2018, Ms. Garrett filed a complaint (the "Complaint") (ECF Doc. 1) against Defendant, setting forth allegations of deceptive, misleading, and unfair debt collection practices in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. seq.* (the "FDCPA").

On February 1, 2018, Ms. Garrett filed a Complaint in the United States District Court, District of Maryland alleging violations of the 15 U.S.C. §1692 *et seq.*, commonly known as the Fair Debt Collection Practices Act (the "FDCPA"). Ms. Garrett's complaint is predicated on a February 3, 2017 collection letter received from Defendant in which Defendant was attempting to collect a debt on behalf of the creditor Just Military Loans. The letter offered Ms. Garrett discounted settlement options if she made payment on the debt within three (3) days. This language was deceptive and overshadowed Ms. Garrett's rights afforded her under §§1692e and 1692g of the FDCPA.

In response to Ms. Garrett's filed Complaint, Defendant produced the underlying contract between Ms. Garrett and the creditor Just Military Loans, for whom it was attempting to collect the debt. The agreement between them included an arbitration provision, a fact Ms. Garrett does not dispute. Rather, Ms. Garrett

disputes the validity of the arbitration provision as it us vehemently contrary to public policy and an unconscionable clause in the contract. Unconscionable arbitration clauses will not be enforced. Finally, mandatory arbitration provisions in military loan contracts have been deemed unenforceable by Federal Law. Therefore, Defendant's Motion to Dismiss and Compel Arbitration must be denied.

## STANDARD OF REVIEW

Defendant's Motion pursuant to Rule 12(b)(1) is procedurally improper. Generally, parties properly bring motions to dismiss in connection with a valid arbitration agreement under Rule12(b)(6). *See e.g.* Moore v. Ferrellgas, Inc., 535 F.Supp.2d 740, 744 (W.D.Mich. 2008). This is because "the existence of a valid arbitration clause does not technically deprive the Court of subject matter jurisdiction." *Livewire Publ'g, Inc. v. Best Software, Inc.*, 252 F.Supp. 2d 74, 78 (D. De;/ 2003); see also *Schwartz v. Coleman*, 833 F.2d 310. 1987 WL 38184 at *2 (4th Cir. 1987). "It instead requires the Court to forego the exercise of jurisdiction in deference to the parties' contractual agreement to address in another forum those disputes which fall within the scope of the agreement to arbitrate." *Livewire*, 252 F.Supp.2d at 78-79. Defendant's Motion was brought improperly under Rule 12(b)(1).

When construing the provisions of an arbitration agreement, "due regard must be given to the federal policy favoring arbitration." *Cara's Notions, Inc. v. Hallmark*

*Cards, Inc.*, 140 F.3d 566, 569 (4th Cir. 1998). All doubts regarding the arbitrability of claims should be resolved in favor of submitting the claims to arbitration. *Hooters v. Am. V. Phillips*, 39 F.Supp. 2d 582, 609 (4th Cir. 1998).

"Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all of any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration." *New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, art II(1),* as implemented by Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §201 *et seq.*

9 U.S.C §206 is directed at courts considering an action or motion to "refer the parties to arbitration."

> The Court of a Contracting State, when seized with an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is <u>null and void</u> or incapable of being performed.

New York Convention, art II(3)(emphasis added).

The United States Court of Appeals for the Fourth Circuit has held that a litigant can compel arbitration under the FAA if he can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the

transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 19910. "Agreements to arbitrate are construed according to ordinary rules of contract interpretation, as augmented by a federal policy requiring that all ambiguities be resolved in favor of arbitration." *Gadson v. SuperShuttle Int'l,* AW-10-01057. 2011 U.S. Dist. LEXIS 33824, 2011 WL 1231311 at *3 (D.Md. Mar. 30, 2011).

The existence of a signed arbitration agreement does not mean that a court immediately must stay proceedings relating to controversies covered by the arbitration agreement. Rather a party may challenge the validity of such an agreement. An agreement to arbitrate disputes is enforceable it if is a valid contract." *Hill*, 412 F.3d at 543. Moreover, "an arbitration clause is a severable contract which is enforceable independently from the contract as a whole." *Holmes v. Coverall N. Am., Inc.*, 336 Md. 534, 649 A.2d 365, 370 (Md. 1994).

State contract formation law determines the validity of arbitration agreements. *Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540 (4th Cir. 2005). The arbitration provision in Ms. Garrett's case provides that the laws of the State of Delaware will apply. State laws applicable only to arbitration agreements that would invalidate such agreements are preempted by the FAA; however, "general contract defenses, such as fraud, duress, or unconscionability, grounded in state

law contract law, may operate to invalidate arbitration agreements. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

# LEGAL ARGUMENT

**1. The arbitration provision is void as to public policy and must not be enforced.**

An agreement that has a tendency "to be against the public good, or to be injurious to the public" violates public policy. *King v. Riveland*, 125 Wn.2d 500, 511, 886 P.2d 160 (1994). An agreement that violates public policy may be void and unenforceable. *Restatement (Second) of Contracts §178 (1981).* Here, the arbitration clause with Just Military Loans violates public policy as a matter of law.

In 2006, the U.S. Department of Defense issued a report to Congress entitled "Report on Predatory Lending Practices Directed at Members of the Armed Forces and Their Dependents" ("DoD Report"). See http://www.defense.gov/pubs.pdfs/reporttocongress_final.pdf. The report focused on "predatory lending" to military personnel. *Id.* at 4. On September 30, 2006, Congress passed the Talent-Nelson Military Lending Act (MLA), 10 U.S.C. §987, which imposed a 36% interest rate cap, banned mandatory arbitration and imposed other restrictions on "consumer credit" extended to service members and their dependents. While military-installment-loans were not originally covered under the

MLA, they became so as of October 3, 2016, effectively banning mandatory arbitration provisions finding they constituted unequal bargaining power on behalf of the lender and against the consumer. See 10 U.S.C. §987(e)(3) ("It shall be unlawful for any creditor to extend consumer credit to a covered member of a dependent of such a member with respect to which … the creditor requires the borrower to submit to arbitration."). Ms. Garrett's alleged debt at the center of this case falls squarely within the purview of the MLA. The unenforceability of arbitration provisions for contracts falling under the purview of the MLA have been upheld in at least one District (see *Cox v. Cmty. Loans of Am., Inc.*, 2012 U.S. Dist. LEXIS 31448 (M.D.Ga. Mar. 8, 2012).

These mandatory arbitration provisions are unenforceable as per federal law, so now should this Court hold that the arbitration was unenforceable in 2013 when Plaintiff signed the promissory note and, is certainly unenforceable today as a matter of public policy. Additionally, the provision barring arbitration in military loan contracts was in full effect in 2017 at the time Ms. Garrett received the collection letter from Defendant attempting to collect the debt and now seeking to enforce the arbitration provision. Accordingly, this case falls under the purview of the MLA and its ban against arbitration provisions in military loan contacts. The provision is void as to public policy and cannot be enforced in this current action.

**2.     The arbitration provision is procedurally and substantively unconscionable and is not legally enforceable.**

"A determination of unconscionability must focus on the relative positions of the parties, the adequacy of the bargaining position, the meaningful alternatives available to the plaintiff, and 'the existence of unfair terms in the contract.'" *Arnold v. United Companies Lending Corp.*, 204 W. Va. 229, 511 S.E.2d 854 (1998).

Delaware law governs the agreement between the parties in this action. [Doc. 7-3, p. 7]. Under Delaware law, the factors that guide the analysis of unconscionability are substantive unconscionability and procedural unconscionability, which must be considered as a whole. *See James v. National Financial, LLC*. Substantive unconscionability looks for evidence of a "gross imbalance that 'shocks the conscience'" and whether the terms of the bargain are "so extreme as to appear unconscionable according to the mores and business practices of the time and place." *Marina View Condo. Ass'n of Unit Owners v. Rehoboth Marina Ventures, LLC*, 2018 Del. Ch. LEXIS 79 at *20 (March 6, 2018).

> Its factors focus on a cost-price disparity, denial of basic rights and remedies, penalty clauses, placement of disadvantageous clauses in inconspicuous locations or among fine print trivia, paraphrasing of disadvantageous clauses in confusing language or in a manner that obscures the problems they raise, and an overall imbalance in the obligations and rights imposed by the bargain.

*Id.*

Courts around the country have found that loan contracts "can be found to be substantively unconscionable even if it was not specifically prohibited by law." *Daye v. Cmty.Fin.Serv.Ctrs.*, 233 F.Supp. 3d 946, 975 (D.C.N.M. Jan. 20, 2017) (citing *State ex rel. King v. B&B Inv. Grp., Inc.*, 2014-NMSC-024 at 670 (S.C. June 26, 2014). "Substantive unconscionability is found where the contract terms themselves are illegal, contrary to public policy, or grossly unfair" *State ex. Rel King v. B&B Inv. Grp., Inc.*, 329 P.3d at 670. Further, "substantive unconscionability can be found be examining the contract terms on their face – a simple task when … all substantive contract terms were nonnegotiable, and embedded in identical boilerplate language." *Id.*

The terms of the contract are grossly unfair. Not only is the arbitration clause unconscionable but the creditor charged Ms. Garrett an annual percentage rate of 80.53%! This unbelievable rate is not only exorbitant, but is also outlawed today under the provisions of the MLA. Finally, the loan agreement required Ms. Garrett to waiver all of her rights and protections under the Servicemembers Civil Relief Act – another provision which has been found unconscionable in contracts under the MLA. For these reasons, the arbitration agreement cannot be enforced.

Procedural unconscionability focuses on the relative bargaining strength of the parties to determine if ''seemingly lopsided terms might have resulted from

arms'-length bargaining." *Id.* Factors relating to procedural unconscionability concentrate on:

> Inequality in bargaining or economic power, exploitation of the underprivileged, unsophisticated, uneducated, and illiterate, use of printed form or boilerplate contracts drawn skillfully by the party in the strongest economic position, which establish industry-wide standards offered on a take it or leave it basis to the party in a weaker economic position, and the circumstances surrounding the execution of the contract, including its commercial setting, its purpose and actual effect.

*Id.*at *20-21.

In the present action, Ms. Garrett needed financial assistance and could not receive a loan with more favorable terms. Loan companies such as Just Military Loans prey on military employees who lack financial savvy or means to obtain funds at lower interest rates. It is hard to fathom that anyone would choose to accept a loan with an annual interest rate of 80.53% unless they were desperate for financial assistance. Just Military Loans took advantage of this unequal bargaining power in offering its loan services to Ms. Garrett. This "take it or leave it" mentality is precisely what the federal government was seeking to curtail when they adopted the MLA.

Finally, as set forth above, the arbitration provision in the military loan agreement between Ms. Garrett and the underlying creditor here has been declared illegal by the United States federal government. While, the portion of the Act

banning mandatory arbitration provisions from military loan agreements was not in effect at the time Ms. Garrett signed the agreement, they have since been found unconscionable. In fact, at the time Ms. Garrett filed her Complaint for violations of the Fair Debt Collection Practices Act, the subject of this litigation, arbitration provisions in her underlying loan had been deemed unenforceable. As such, the arbitration provision cannot be enforced in the present action.

## CONCLUSION

For the foregoing reasons, Ms. Garrett respectfully requests that this court deny Defendant's Motion to Dismiss and Compel Arbitration in its entirety and allow this case to proceed in federal court.

Respectfully Submitted,

**MERIDIAN LAW, LLC**
*Attorneys for Plaintiff*

Dated: May 7, 2018

/s/ Aryeh E. Stein
Aryeh E. Stein, Fed. Bar No. 24559
600 Reisterstown Rd, Suite 700
Baltimore, MD 21208
Telephone: (443) 326-6011
Fax: (410) 653-9061
astein@meridianlawfirm.com

**CERTIFICATE OF SERVICE**

      The undersigned does hereby certify that a true and correct copy of the foregoing was served upon the individual listed below by ECF/CM procedures on this 7th day of May, 2018 to:

            James M. Brault, Esq.
            Monterey Financial Services, LLC
            101 S. Washington Street
            Rockville, MD 20850
            jmb@braultgraham.com

            /s/Aryeh E. Stein
            Aryeh E. Stein